FILED

2015 Oct-30  PM 12:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| TONY EUGENE GRIMES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 2:13-cv-01267-JHH-JHE |
| | ) | |
| VICTORRUS FELDER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff Tony Eugene Grimes filed this *pro se* action pursuant to 42 U.S.C. § 1983, alleging that he has been deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at Donaldson Correctional Facility in Bessemer, Alabama. Plaintiff names as defendants Correctional Officer Victorrus Felder, Correctional Officer Morris Rogers, and Warden Cheryl Price. The plaintiff seeks compensatory and punitive damages, as well as declaratory relief, for alleged excessive force. In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(2), the complaint was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

**I.  Procedural History**

On April 2, 2014, the court entered an Order for Special Report directing the Clerk to forward copies of the complaint to the defendants and requesting they file a special report addressing the plaintiff's factual allegations. (Doc. 7). The Order advised the parties that the special report, if appropriate, may be considered as a motion for summary judgment filed

pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (*Id*.).  On June 30, 2014, the defendants filed a special report accompanied by affidavits and copies of certain prison administrative and medical records pertaining to the plaintiff.  (Doc. 14).  On April 22, 2015, the parties were notified that the court would construe the defendant's special report as a motion for summary judgment, and the plaintiff was notified that he would have twenty days to respond to the motion by filing affidavits or other material if he chose.  (Doc. 32).  After requesting and receiving an extension of time, (docs. 34 & 35), the plaintiff filed a response in opposition to the defendants' special report on June 26, 2015. (Doc. 37).  The plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56.  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  After requesting and receiving an extension of time, (docs. 34 and 35), the plaintiff filed a response in opposition to the defendants' special report on June 26, 2015.  (Doc. 37).  The plaintiff then filed an additional motion for extension of time, seeking another forty-five (45) days solely to respond to the motion as it related to defendant Price.  (Doc. 38).  The court granted that motion in part, allowing the plaintiff an additional fourteen (14) days to submit a further response.  (Doc. 39).  That deadline has expired and the court has received no further response from the plaintiff.  This matter is now before the court on the defendants' special report being construed as a motion for summary judgment and the plaintiff's response thereto.

## II. Summary Judgment Standard

Because the special report of the defendants is being considered as a motion for summary judgment, (doc. 32), the court must determine whether the moving parties, the defendants, are entitled to judgment as a matter of law.  Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law.  FED. R.

CIV. P. *56.*  In making that assessment, the court must view the evidence in a light most favorable

to the non-moving party and must draw all reasonable inferences against the moving party.

*Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The burden of proof is upon

the moving party to establish his prima facie entitlement to summary judgment by showing the

absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate

burden of proving his action, can show evidence regarding each element of his claim, all other

issues of fact become immaterial, and the moving party is entitled to judgment as a matter of

law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986);  *Bennett v. Parker*, 898 F.2d

1530, 1532-33 (11th Cir. 1990).  As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a
> prima facie case.  "In such a situation, there can be 'no genuine issue as to any
> material fact,' since a complete failure of proof concerning an essential element of
> the non-moving party's case necessarily renders all other facts immaterial."
> [citations omitted].  Thus, under such circumstances, the public official is entitled
> to judgment as a matter of law, because the plaintiff has failed to carry the burden
> of proof.  This rule facilitates the dismissal of factually unsupported claims prior
> to trial.

*Bennett*, 898 F.2d at 1532.  However, any "specific facts" pled in a *pro se* plaintiff's sworn

complaint must be considered in opposition to summary judgment.  *See Caldwell v. Warden, FCI*

*Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093,

1095 (11th Cir. 1986)).

### III. Summary Judgment Facts

On September 20, 2011, the plaintiff was an inmate in the Donaldson Correctional

Facility in Bessemer, Alabama.  (Doc. 1 at 5).[1]  On that date, defendants Felder and Rogers were

---

[1]All citations to the record are to the document and page numbers assigned by the court's
electronic filing system.

part of a "C.E.R.T" team (Correctional Emergency Response Team) conducting searches at

Donaldson to discover and remove contraband and looking for information about "crips &

bloods fighting at West Jefferson." (Doc. 1 at 5; doc. 37 at 4). Between 8:00 and 9:00 a.m. that

day, defendants Rogers and Felder entered the plaintiff's cell to perform the contraband search.

(Doc. 1 at 11-12). Defendant Felder ordered the plaintiff and his cell mate to lay face down on

their bunks. (*Id*. at 7, 11). Although the plaintiff complied with the order and was lying on his

bed face down, defendant Felder struck the plaintiff on the side of the head, then struck the

plaintiff a second time, perforating the plaintiff's right eardrum. (Doc. 1 at 7-8; doc. 37, at 5).

The plaintiff asserts as follows:

> After the second blow from 'V. Felder', I saw stars & was placed in shock – as I
> yelled out: "Ouch!!!", by the trauma-force from that blow; I felt pain, but more
> than anything I was shocked at how hard 'V. Felder' hit me; I thought he was
> going to inflict more blows upon me;

(Doc. 37 at 15) (punctuation in original). The plaintiff's cell mate, Johnnie James stated under

oath as follows:

> Mr. Felder had walked towards [the plaintiff] . . . in the top bunk. I heard the
> sound of a slap. I heard Mr. Felder step back a few feet, then came back toward
> the bunks we laid in. I heard a loud sound of a thud, like someone hitting the wall
> with their fist . . . . Along with the thud sound, I heard [the plaintiff] scream out:
> "OUCH!!

 (Doc. 1 at 13).

The plaintiff further claims defendant Rogers was standing right behind defendant Felder

and could have, but failed to prevent Felder from hitting the plaintiff a second time. (Doc. 37 at

15). Defendants respond to the plaintiff's claims by asserting that defendant Felder never struck

4

the plaintiff and that the plaintiff did not suffer a perforated ear drum on the date in question.[2]
(Doc. 14 at 3; doc. 14-2 at 1-2; doc. 14-3).

Records from an investigation into this incident reflect that the plaintiff reported that on September 20, 2011, at 8:30 a.m., he was lying on his bunk as instructed with the left side of his head on his pillow, and that an "unidentified officer" punched him in the right ear.[3]   (Doc. 14-1 at 4).  When the plaintiff got up, he could not hear from his right ear.  (*Id*.).  The plaintiff's cell mate, Johnnie Lee James, signed a statement that he heard an officer hit the plaintiff but could not see what happened as he was face down on his mattress.  (*Id*. at 5).

The plaintiff reported the blow to his ear to a supervisor, who had the plaintiff taken to the medical unit.  (Doc. 1 at 12).  He was seen by a nurse at 8:50 a.m.  (Doc. 14-1 at 8).  He reported that he could not hear from his right ear, but did not state he was in any pain and no bleeding or redness was noted.  (*Id*.).  A small perforation was possible and the plaintiff was prescribed Augmentin to help with healing.  (Doc. 27-1 at 2).  On September 23, 2011, the plaintiff also complained of headaches and that he was aching and nauseous when he got up from sleep.  (Doc. 14-1 at 32).  A medical record by Dr. Joseph Marino dated September 26, 2011, reflects the plaintiff complained that his hearing in his right ear was distorted and he had a twitching under his right eye.  (Doc. 14-1 at 30-32). He also reported that he had pain when lying

---

[2]According to the nearly identical statements from defendants Rogers and Felder, they entered the cell, instructed the inmates to strip, searched their clothing, instructed the inmates to put on their boxers and shower shoes, and exit the cell.  (Doc. 14-1 at 6 and 7).  Defendants Rogers and Felder then searched the cell, found no contraband, and told the inmates to return to the cell, but only one returned.  (*Id*.).

[3]The factual allegations of this action strongly resemble those in *Poole v. Felder*, 2:13-cv-1265-JHH-JEO.  The plaintiff has included the affidavit of Ricardo Poole, who suffered a perforated ear drum after being struck by defendant Felder the morning of September 20, 2011.  (Doc. 37 at 25-26).

on his right side.  (*Id*. at 30).  On October 3, 2011, the perforation was noted to be healing.  (*Id*. at 31).  The plaintiff estimated his hearing had returned to about 60% and a small amount of scabbing was noted in the plaintiff's ear canal.[4]  (*Id*.).

An investigative report completed two days later found that the use of force could not be validated based on the medical records, the defendant officers statements, and inmate James' statement.  (Doc. 14-1, at 9).

## IV. Discussion

### A.  Defendant Felder

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citations omitted).  When force is applied by prison officials, any Eighth Amendment inquiry must concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320-321.  In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary.  503 U.S. 1, 7 (1992).   They include: (1) the need for the application of force; (2) the relationship between the need and the amount of force used; (3) the threat reasonably perceived by the prison official; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the injury suffered by the inmate. *Id.* at 7.

---

[4]The defendants' synopsis of the plaintiff's medical treatment for this injury is misleading and incomplete.  The defendants assert the plaintiff was examined on September 20, 2011, by Nurse Debra Kilgore, who noted no injuries, and Dr. Joseph Marino, who noted no bleeding. (Doc. 14 at 4).  The defendants continue that the plaintiff was examined again on October 3, 2011, by Dr. Marino who noted no bleeding, no visible perforation, and that the ear canal was clear.  (*Id*.).  Defendants allege "[t]his was the extent of treatment . . . ."  (*Id*.).

Applying these standards to the facts before the court, genuine issues of fact exist with respect to the plaintiff's Eighth Amendment excessive force claim against defendant Felder. The plaintiff's sworn complaint and affidavits set out specific and detailed facts surrounding the events made the basis of this action. In both the initial complaint and his affidavits, the plaintiff stated without refute that he had complied with the defendants' orders to lay face down on his bunk, and there is nothing in the record to suggest he posed a threat to defendants Felder and Rogers. The plaintiff's allegations, taken in the light most favorable to the plaintiff for purposes of summary judgment, show no need for the application of force, much less to the extent administered.[5] A reasonable jury could find that force was applied for reasons other than a good faith effort to maintain discipline, and specifically for the purpose of "maliciously and sadistically . . . causing harm." *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). The defendants' general assertion that no force was used on this occasion, so "nothing was done maliciously or sadistically" (doc. 14, at 7), simply creates a genuine issue of material fact to be decided by the trier of fact.

The defendants further argue that any injury the plaintiff suffered was *de minimus*.[6] (Doc. 14 at 7). However, in each of the cases relied on by the defendants, the court found either that some amount of force was needed due to the circumstances presented in that case, or that the granting of summary judgment in the defendants' favor was error. For example, in *Bennett v. Parker*, the Court found that the fact Bennett had created a disturbance justified the amount of

---

[5] The defendants argument that "[at] no time was any injury found," (*see e.g.*, doc. 14 at 7), is contradicted by the medical record of September 20, 2011, which notes a "possible perforation" and the plaintiff's complaint of decreased hearing. (Doc. 27-1 at 2).

[6] The court notes the inherent contradiction in the defendants' position that "there was no objective indication at all that Plaintiff was hit much less that he suffered any injury," (doc. 14, at 7), and the defendants' discussion that any injury the plaintiff suffered was *de minimus*. (*Id.* at 7-9).

force used.   898 F.2d 1530, 1533 (11th Cir. 1990).   In *Brown v. Smith*, 813 F.2d 1187, 1189

(11th Cir. 1987), the force used was justified where a verbal altercation occurred between Brown

and prison guards, whereupon Brown refused to enter his cell.   In *Williams v. Cash*, 836 F.2d

1318 (11th Cir. 1988), the Eleventh Circuit held that because there was a genuine issue of

material fact as to how the plaintiff's elbow was broken, summary judgment was inappropriate.

*Id.* at 1320. The facts before this court are akin to those in *Perry v. Thompson*, where the

Eleventh Circuit ruled

> Plaintiff alleged specific facts in his sworn complaint and they were required to be
> considered in their sworn form . . . . He filed an affidavit by an inmate that in part
> supported the sworn statements in his complaint. He followed all this with another
> affidavit restating in detail the facts set out in his complaint . . . .
>
> The defendants' affidavits were filed. What was then before the court was a
> square, head-on dispute of material facts. Did the defendants take plaintiff into the
> barber shop for a proper purpose, "shaving" of his beard with clippers (allowable
> under the terms of his shaving pass) or did they take him in to have his beard
> removed to the skin? They said the former, he said the latter. Did they beat him,
> and did he end up on the floor where he was beaten and kicked. They said "no,"
> he said "yes." Did they use no more force than was reasonably justified under
> principles permitting prison officers to keep order and to enjoy a range of
> allowable mistake in doing so, or did they use excessive force? They set out
> specific facts tending to show allowable force. Plaintiff set out facts tending to
> establish a prima facie case that the force was excessive. The officers do not state
> that unusual force by them was justified by plaintiff's resisting or himself using
> force. Rather they say they took him one by each arm and led him or escorted him
> into the shop and that nothing else occurred.
>
> The trial court rejected the sworn statements of definite facts in plaintiff's
> complaint, repeated later in his separate affidavit and accepted the factual versions
> set out in defendants' affidavits. Where plaintiff has presented specific facts to the
> trial court, in sworn form, the court may not make such a credibility choice nor
> may it grant summary judgment against plaintiff on the procedural ground that he
> did not controvert the factual affidavits that controverted his sworn factual
> statements.
>
> We do not imply that either set of sworn facts is true and the other not. What we
> do hold is that dismissal and summary judgment were improper on what was
> before the court.

*Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).[7]

Even if the foregoing cases held what the defendants represent, a perforated eardrum

cannot be characterized as a *de minimis* injury. As set forth by the Eleventh Circuit in *Saunders*

*v. Duke*,

> the Supreme Court has recognized that "[a] [defendant] who is gratuitously beaten
> by guards does not lose his ability to pursue an excessive force claim merely
> because he has the good fortune to escape without serious injury." *Wilkins v.*
> *Gaddy*, 559 U.S. 34, 38–39, 130 S.Ct. 1175, 175 L.Ed.2d 995 (2010) (explaining
> that the "core judicial inquiry" for an excessive force claim under the Eighth
> Amendment is not based on the extent of the plaintiff's injury, but rather on "the
> nature of the force" used, i.e., "whether [the force] was nontrivial and 'was
> applied maliciously and sadistically to cause harm'"). "To conclude ... that the
> absence of 'some arbitrary quantity of injury' requires automatic dismissal of an
> excessive force claim improperly bypasses [the] core [judicial] inquiry," which is
> the nature of the force. *Id.* at 39, 130 S.Ct. 1175.

766 F.3d 1262, 1270 (11th Cir. 2014) (alterations in original); *see also Lee v. Ferraro*, 284 F.3d

1188, 1200 (11th Cir. 2002) ("objectively unreasonable force does not become reasonable simply

because the fortuity of the circumstances protected the plaintiff from suffering more severe

physical harm.").

In this instance, the plaintiff has alleged facts from which a reasonable jury could find

that defendant Felder's use of force was objectively unreasonable. Therefore, even if the

plaintiff suffered only minor injury, that fact, standing alone, does not entitle the defendants to

summary judgment.

The defendants further argue that even if the plaintiff could establish that his version of

events was true, they are entitled to qualified immunity. (Doc. 14 at 11). However, the law has

been clearly established for many years that the use of gratuitous excessive force on a prisoner

violates the constitutional rights of that individual. The Eleventh Circuit has stated as follows:

---

[7]The defendants rely on this case as well to support their argument that any injury was *de minimus* and therefore not a constitutional violation.

> In order to have a valid claim on the merits of excessive force in violation of [the Eighth Amendment], the excessive force must have been sadistically and maliciously applied for the very purpose of causing harm. Equally important, it is clearly established that all infliction of excessive force on a prisoner sadistically and maliciously for the very purpose of causing harm and which does cause harm violates the Cruel and Unusual Punishment Clause. So, where this type of constitutional violation is established there is no room for qualified immunity. It is not just that this constitutional tort involves a subjective element, it is that the subjective element required to establish it is so extreme that every conceivable set of circumstances in which this constitutional violation occurs is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*.

*Johnson v. Breeden,* 280 F.3d 1308, 1321-1322 (11th Cir. 2002); *see also Skritch v. Thorton*, 280 F.3d 1295, 1301 (11th Cir. 2002) ("In this Circuit, a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*.").

Like the rest of the defendants' arguments, this one too rests on the assumption that the search for prison contraband on the date in question "was performed . . . without incident." (Doc. 14 at 13-14).  However, as the court cannot ignore the plaintiff's sworn statements that Felder gratuitously "swung a blow that landed upon [the plaintiff's] right ear," (doc. 37 at 15), the court cannot find that defendant Felder is entitled to qualified immunity for his actions.

**B.  Defendant Rogers**

The plaintiff faults Rogers for not preventing Felder from striking a second blow upon plaintiff.  According to the plaintiff, defendant Rogers was "standing right behind" Felder and "could have restrained" Felder.  (*See* doc. 37, at 15). While a guard can be liable for nonfeasance under § 1983 if he fails to intervene when other guards use excessive force, such an individual must actually be in a position to intervene.  *See Hadley v. Gutierrez,* 526 F.3d 1324, 1330-1331 (11th Cir. 2008) (citing *Priester v. City of Rivera Beach, Fla.,* 208 F.3d 919, 924 (11th Cir.

10

2000))*; Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).  Plaintiff states only that Rogers

was present and speculates that he "could have restrained" Felder.  He does not, and realistically

cannot, establish that defendant Rogers had any forewarning that Felder would strike the plaintiff

a second time, especially in light of the plaintiff's allegation that the first blow by Felder was a

"slap" after which the plaintiff "released a giggled type sigh."  (Doc. 37 at 15).  The plaintiff also

states that the slap preceded the blow by "about two seconds."  (*Id.*).  These factual allegations

are insufficient to support a finding that Rogers had a realistic opportunity to intervene.  *See*

*Priester,* 208 F.3d at 924.  Accordingly, defendant Rogers is due summary judgment in his favor.

### C.  Defendant Warden Cheryl Price

The plaintiff alleges that defendant Price had a "hands-off" policy which she failed to

adequately teach to defendants Felder and Rogers.  (Doc. 1, at 5, 10).  He argues that because

Rogers and Felder were not "originally" employed at Donaldson Correctional Center, they were

not familiar with defendant Price's "hands-off" policy.  (Doc. 37, at 4).  Defendant Price states in

her affidavit that she has no knowledge of a "hands-off" policy.  (Doc. 14-1, at 2).

Assuming the plaintiff is attempting to state a claim for supervisory liability against

defendant Price, such a claim fails.  Under 42 U.S.C. § 1983, a supervisor cannot be held liable

for the wrongful actions of his or her subordinates unless there is a causal connection between

the supervisor's actions and the constitutional violation alleged.  *See e.g., Keith v. DeKalb*

*County, Ga.*, 749 F.3d 1034, 1047-1048 (11th Cir. 2014) (citing *Cottone v. Jenne*, 326 F.3d

1352, 1360 (11th Cir. 2003).  "The necessary causal connection can be established 'when a

history of widespread abuse puts the responsible supervisor on notice of the need to correct the

alleged deprivation, and he fails to do so.'" *Cottone*, 326 F.3d at 1360 (citations omitted). "The

deprivations that constitute widespread abuse sufficient to notify the supervising official must be

obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). A plaintiff can also establish the necessary causal connection by showing "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so," *Gonzalez v. Reno*, 325 F.3d 1228, 1235 (11th Cir. 2003), or that a supervisor's "custom or policy ... resulted in deliberate indifference to constitutional rights," *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir.1991).

Because the plaintiff's claims against defendant Price are vague, conclusory, and wholly lacking in any factual support, the plaintiff has failed to create a genuine issue of material fact on this claim.  He does not allege widespread abuses or facts to support an inference that defendant Price instructed Felder and Rogers to act in the described manner.  Defendant Price is therefore due summary judgment.

## V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** that the motion for summary judgment be **DENIED** as to the claims asserted against Defendant Felder, and the motion for summary judgment be **GRANTED** as to the claims against Defendants Rogers and Price.

The undersigned **FURTHER RECOMMENDS** this action be referred back to the undersigned for further proceedings.

## VI. Notice of Right to Object

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court. **Any objections to the failure of the magistrate judge to address any contention raised in the**

**petition also must be included.**  Failure to do so will bar any later challenge or review of the factual findings of the magistrate judge, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013).

To challenge the findings of the magistrate judge, a party must file with the clerk of the court written objections which specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.  Any objections to the failure of the magistrate judge to address any contention raised in the complaint must also be included.  Objections not meeting the specificity requirement set out above will not be considered by a district judge.  The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.  Furthermore, it is not necessary for a party to repeat legal arguments in objections.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge shall make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.  The district judge, however, need conduct a hearing only in his discretion or if required by law, and may consider the record developed before the magistrate judge, making his own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.  Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a district judge.

The Clerk is **DIRECTED** to serve a copy of this report and recommendation upon the plaintiff.

DONE this 30th day of October 2015.

 

 

_____

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE